IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

_____

UNITED STATES OF AMERICA,

     Plaintiff,

v.

SPEED FAB-CRETE CORPORATION,
CARL EUGENE HALL, RONALD ALAN
HAMM, DAVID LEON BLOXOM, and
JANET HALL,

     Defendants.

Civil Action No. 3:23-CV-2162-S

## COMPLAINT IN INTERVENTION

1.     Plaintiff, the United States of America, on behalf of its agency the U.S. Small Business Administration (SBA), files this complaint in intervention against Defendants Speed Fab-Crete Corporation, Carl Eugene Hall, Ronald Alan Hamm, David Leon Bloxom, and Janet Hall to recover treble damages, civil penalties, and costs under the False Claims Act (FCA), 31 U.S.C. §§ 3729–33, and to recover damages and other monetary relief under the common law and equitable theory of unjust enrichment, in connection with federally guaranteed Paycheck Protection Program (PPP) loans improperly obtained by Speed Fab-Crete through its and the other defendants' actions.

2.     Speed Fab-Crete and its owners and/or officers or directors Carl Hall, Hamm, Bloxom, and Janet Hall made false or fraudulent statements and caused false claims and false records to be submitted to the United States in an effort to obtain

federally guaranteed PPP loans.  Specifically, despite the fact that at least two of Speed Fab-Crete's owners (Hamm and Bloxom) who held a greater-than-20% interest in the company were the subject of criminal charges at the time Speed Fab-Crete initially applied for a PPP loan, Speed Fab-Crete's loan application—which was signed by Hamm, Bloxom, and Janet Hall—falsely certified (1) that there was no individual owning 20% or more of the company's equity who was the subject of such charges, and (2) that Speed Fab-Crete was eligible to receive a loan under the applicable PPP rules.  These certifications were false because Hamm and Bloxom were at that time each owners of more than 20% of the company's equity and were the subject of a criminal information filed in federal court.  This rendered Speed Fab-Crete ineligible for a PPP loan.

3.      In addition, Carl Eugene Hall was subject to the same criminal information in federal court as Hamm and Bloxom at the time Speed Fab-Crete submitted its initial PPP loan application.  And only weeks prior to the submission of the application, Carl Hall had nominally transferred his shares representing a greater-than-20%-equity stake in the company to his wife, Janet Hall—while nonetheless remaining the company's Chief Executive Officer.  And even though Janet Hall signed Speed Fab-Crete's loan application, that application failed to disclose that either of the Halls held any ownership interest in the company, despite a requirement to list all such owners.

4.      Speed Fab-Crete later applied for a Second Draw PPP loan, at which time Hamm, Bloxom, and Janet Hall again certified that Speed Fab-Crete was eligible to receive a loan under the applicable PPP rules.  This certification was also false—Speed Fab-Crete's ineligibility for the initial loan rendered it ineligible to receive a Second

Draw loan—and again Speed Fab-Crete's loan application failed to disclose that either Carl or Janet Hall owned at least 20% of the company's equity, despite a requirement to list all such owners.

5.      As a result of the defendants' false statements, false records, and fraud, Speed Fab-Crete obtained two PPP loans that it was not eligible for, and this ultimately caused the United States to sustain losses in excess of $2 million for the loan principal and interest amounts that were forgiven for each loan under the PPP, plus the processing fees that were paid by the SBA to the issuing bank for each loan.

## I.      Jurisdiction and Venue

6.      This Court has jurisdiction pursuant to 28 U.S.C. § 1345, 31 U.S.C. §§ 3730 and 3732, and 28 U.S.C. § 1367(a).

7.      This Court has personal jurisdiction over the defendants, and venue is proper in the Northern District of Texas, pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1391 and 1395, because at all times material to the allegations in this complaint, the defendants transacted business, could be found in, and/or resided in the Northern District of Texas, and a substantial part of the events or omissions giving rise to the claim occurred here.

## II.      Parties

8.      Plaintiff is the United States, acting on behalf of the SBA, which administered the PPP.

9.      Relator Aidan Forsyth filed this suit as a *qui tam* action on behalf of the United States.

10.     Defendant Speed Fab-Crete Corporation is a privately-held Texas corporation located in Kennedale, Texas.

11.     Defendant Carl Eugene Hall is an individual who resides in Kennedale, Texas.  He was previously the record owner of 33% of Speed Fab-Crete's shares (which were later transferred to his wife Janet Hall), was the company's Chief Executive Officer in 2020, and is now the company's Chief Operating Officer.

12.     Defendant David Leon Bloxom is an individual who resides in Fort Worth, Texas.  He is the owner of 34% of Speed Fab-Crete's shares and is the company's Chairman.

13.     Defendant Ronald Alan Hamm is an individual who resides in Rowlett, Texas.  He is the owner of 33% of Speed Fab-Crete's shares and is the company's President.

14.     Defendant Janet Hall is an individual who resides in Kennedale, Texas.  She is the nominal owner of 33% of Speed Fab-Crete's shares.  Hall's husband, Carl Eugene Hall, previously held these shares in his own name until they were transferred to Janet Hall in March 2020.

### III.     Legal Background

**A.     The CARES Act and Paycheck Protection Program**

15.     On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. 116-136, was enacted to provide emergency assistance for individuals, families, and businesses affected by the COVID-19 pandemic.  Section 1102 of the CARES Act temporarily permitted the SBA to guarantee 100 percent of loans

made by participating lenders under a new program known as the PPP pursuant to section 7(a)(36) of the Small Business Act (15 U.S.C. § 636(a)(36)).  Section 1102(F)(ii)(I) of the CARES Act stated that PPP lenders were deemed to have been delegated authority by the SBA Administrator to make and approve PPP loans.  And section 1106 of the CARES Act provided for forgiveness of loans guaranteed under the PPP.

16.    In order to obtain a PPP loan, a business, through its authorized representative, signed and submitted a PPP loan application to the lender with delegated authority from the SBA, using the SBA Form 2483 loan application form.  The loan application form required the applicant to acknowledge the PPP program rules and make certain affirmative certifications regarding program eligibility, including as shown here:

**By Signing Below, You Make the Following Representations, Authorizations, and Certifications**

CERTIFICATIONS AND AUTHORIZATIONS

I certify that:
- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).

17.    Under the PPP, lenders were generally allowed to rely on borrowers' certifications regarding program eligibility and use of loan proceeds, and to rely on specified documents provided by the borrower to determine qualifying loan amount and eligibility for loan forgiveness.

18.    If the lender approved the borrower's application, the lender submitted information from the borrower's loan application form to the SBA via the agency's electronic "ETran" processing system.  Based on the lender's electronic submission, the loan was assigned a loan number, and the SBA provided a loan guarantee to the lender.

The lender then disbursed the loan to the borrower using its own funds and notified the SBA that the loan was fully disbursed.  Upon receipt of that notification, the SBA paid the lender a processing fee.

19.     A PPP borrower could later apply for loan forgiveness, which required the borrower to certify that the loan had been used for authorized purposes and that other PPP requirements were met.  As with the initial loan applications, loan forgiveness applications could be submitted to the lender, and if the lender determined that the requirements for forgiveness were met, it would submit the loan forgiveness application to the SBA.  The great bulk of loan forgiveness applications were subject only to "auto review" by the SBA's computer system, meaning that if the appropriate certifications and other information had been provided, forgiveness would be approved and the SBA would remit payment to the lender for the principal amount of the loan, plus interest.

## B.     PPP Eligibility Requirements

20.     Consistent with the rules governing SBA's section 7(a) loan program generally, which has long limited loan eligibility for persons with (or companies with owners with) pending criminal charges or other criminal histories, PPP loans were subject to a number of rules and eligibility restrictions, including restrictions relating to criminal charges and criminal history.

21.     As relevant here, a company was ineligible to obtain a PPP loan if any individual owning 20% or more of the company's equity was subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought, or was presently incarcerated or on probation.  These requirements were the

subject of a "yes or no" question on the application form promulgated by the SBA for

PPP loans, with a warning that if the answer was "yes," the loan would not be approved,

as shown here:



*If questions (5) or (6) are answered "Yes," the loan will not be approved.*

| | Question | Yes | No |
|---|---|---|---|
| 5. | Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole?<br>Initial here to confirm your response to question 5 → | ☐ | ☐ |

22.     In addition, the text of an Interim Final Rule issued by the SBA to

implement the PPP likewise stated that a business would be ineligible if any "owner of 20

percent or more of the equity of the applicant is incarcerated, on probation, on parole;

presently subject to an indictment, criminal information, arraignment, or other means by

which formal criminal charges are brought in any jurisdiction; or has been convicted of a

felony within the last five years."  The Interim Final Rule also stated that businesses of

the type identified in 13 C.F.R. § 120.110 and in Subpart B, Chapter 2, of the SBA's

Standard Operating Procedure (SOP) 50 10 were ineligible for PPP loans.  Section

120.110 rendered a loan applicant ineligible if it had any "Associate"—which was

defined as any officer, director, key employee, or holder of 20% or the company's equity,

*see* 13 C.F.R. § 120.10—"who is incarcerated, on probation, on parole, or is under

indictment for a felony or a crime of moral turpitude."  13 C.F.R. § 120.110(n).  And

SOP 50 10 more broadly required any such "Associate" of a company to be of "good

character," which requirement, among other things, (1) barred the provision of financial

assistance to any company with an Associate "[c]urrently subject to an indictment,

criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction," and also (2) barred the disbursement of any loan to a company with an Associate with a misdemeanor conviction within 6 months of the loan application or a felony conviction. *See* SOP 50 10 5(K), Subpart B, Chapter 2, § 3.A.13.

23.     Additionally, under SOP 50 10, if an "Associate" with some disqualifying criminal charge or criminal history reduced his ownership in the company within the 6 months preceding the application for a loan in an attempt to avoid the disqualification and mandatory disbursement bar, the SBA would nonetheless apply the disqualification unless the divestiture was "complete," meaning that the person severed any relationship with the company. *See id.*

24.     A final eligibility provision that is relevant here relates to so-called "Second Draw" loans under the PPP, which were essentially a second round of PPP loans authorized by Congress as part of the Economic Aid Act of 2021. An Interim Final Rule issued by the SBA to implement the Second Draw Loan portion of the PPP stated that "an entity that is ineligible to receive a First Draw PPP Loan under the CARES Act or Consolidated First Draw PPP IFR is also ineligible for a Second Draw PPP Loan," with subsection (e)(1) of the Interim Final Rule "ensur[ing] that a borrower that received a First Draw PPP Loan despite being ineligible to receive the loan is not eligible to receive a Second Draw PPP Loan."

## C.     The False Claims Act

25.     Originally enacted in the 1863 to combat fraud against the Union Army during the Civil War, the False Claims Act is the primary tool with which the United

States combats fraud against the Government and protects the federal fisc.  The Supreme Court has held that the FCA's provisions must be construed broadly to reach "all types of fraud, without qualification, that might result in financial loss to the Government." *United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968).

26.    The FCA establishes liability for various forms of conduct related to the submission of a false or fraudulent claim for payment from the federal government.  The FCA imposes liability for knowingly presenting false claims for federal funds, or for causing such false claims to be presented.  31 U.S.C. § 3729(a)(1)(A).  The statute also establishes liability for knowingly making, using, or causing a false record or statement material to a false claim for federal funds.  *Id.* § 3729(a)(1)(B).

27.    The terms "knowing" and "knowingly" are defined by the FCA to mean that, with respect to the subject false information, a person has actual knowledge of the falsity, acts in deliberate ignorance of the truth or falsity, or acts in reckless disregard of the truth or falsity, with proof of specific intent to defraud not required.  *Id.* § 3729(b).

28.    As defined in the FCA, the term "claim" means any request or demand for money or property that is presented or caused to be presented to the United States; or that is made to a contractor, grantee, or other recipient, if the money is to be spent or used on behalf of the Government or to advance a Government program or interest, so long as the United States provides or has provided any portion of the subject money or property or will reimburse such contractor, grantee, or other recipient for any portion of the subject money or property.  *Id.*

29.    The term "material" is defined in the FCA to mean having a natural

tendency to influence, or be capable of influencing, the payment or receipt of money or property. *Id.*

30.    The FCA provides for a recovery of three times the damages sustained by the United States (treble damages), plus a civil penalty for each violation. *Id.* § 3729(a)(1). Pursuant to the Bipartisan Budget Act of 2015, all civil statutory penalties, including those set forth in the FCA, are required to be adjusted annually for inflation. *See* Pub. Law. No. 114-74, § 701, 129 Stat. 584, 599. At this time, FCA penalties assessed after February 12, 2024, whose associated violations occurred after November 2, 2015, are no less than $13,946 and no more than $27,894 for each violation. *See* 28 C.F.R. § 85.5.

## IV.    Defendants' Fraudulent Activity

31.    Speed Fab-Crete was (and is) a construction company doing business in the Northern District of Texas. As of 2019 and continuing into at least May 2020, its Chairman was David Bloxom, its President was Ronald Hamm, its Chief Executive Officer was Carl Hall, and its Treasurer was Robert James. At some point thereafter, Carl Hall's title was apparently shifted to Chief Operating Officer rather than Chief Executive Officer (with the position of Chief Executive Officer apparently no longer existing within the company).

32.    During the government's investigation of this case, Speed Fab-Crete initially represented to the government (via a sworn interrogatory) that its owners from January 1, 2019 through October 10, 2023 (when the interrogatory at issue was served) were Bloxom, Hamm, and Janet Hall, as shown here:

**GENERAL INSTRUCTIONS**

1.    Relevant Time Period: unless otherwise stated in any specific request below, the Relevant Time Period for each request is January 1, 2019, through the date of service of this Demand.

**INTERROGATORIES**

1.  Identify the owners of Speed Fab-Crete, including the ownership interest of each owner during the Relevant Time Period.

**SPEED FAB-CRETE INTERROGATORIES**

**CIVIL INVESTIGATIVE DEMAND CID-23-D-032**

1.  The Owners were David Bloxom 34%, Ronald Hamm 33% and Janet Hall 33%

33.    However, according to documents later supplied by Speed Fab-Crete, as of 1998 and continuing into at least 2020, Speed Fab-Crete's record owners were in fact Bloxom, Hamm, and Carl Hall (each owning 20,000 shares).  According to Speed Fab-Crete's own documents later supplied to the government during the investigation, Carl Hall's shares in the company were nominally transferred to his wife, Janet Hall, in March 2020.

**A.    Speed Fab-Crete's Scheme to Employ Illegal Aliens**[1]

34.    In October 2015, Homeland Security Investigations of the Department of Homeland Security (HSI) commenced a Form 1-9 inspection of Speed Fab-Crete. Among other things, HSI obtained employment records, including Forms 1-9, from Speed Fab-Crete concerning its work force.  HSI determined that of the 106 employees of

---

[1] The information contained in this section of the complaint is taken from factual résumés filed in the underlying criminal case involving Speed Fab-Crete's owners.

Speed Fab-Crete, approximately 43 employees were not authorized to work in the United States because they were in the United States illegally.

35.    In April 2016, Speed Fab Crete entered into a settlement agreement with the United States Department of Homeland Security, United States Immigration and Customs Enforcement (ICE).  In the settlement agreement, Speed Fab-Crete agreed to provide ICE with a memorandum, no later than October 15, 2016, detailing the employment status of the 41 illegal aliens.  ICE agreed that Speed Fab Crete would have six-month period before ICE would conduct any subsequent 1-9 inspection.  Speed Fab-Crete further acknowledged that any subsequent violations may subject the company to enhanced penalties as it would be treated as an employer with previous violations.

36.    In or about February 2016, before entering into the settlement with ICE, Speed Fab-Crete began taking steps to replace the 43 illegal aliens with legal employees. To that end, Speed Fab-Crete's owners met with representatives from Take Charge Staffing, including a man named Mark Sevier, about whether Take Charge Staffing could supply legal employees.  During the meeting, Carl Hall asked Sevier to provide a "payroll" service by transferring the illegal aliens to Take Charge Staffing's payroll system and assigning them back to Speed Fab-Crete.  At the time, Sevier refused to engage in such conduct.

37.    Between February 2016 and September 2016, Take Charge Staffing attempted to supply legal workers to Speed Fab Crete, but was largely unsuccessful in replacing the full work force.  In or about September 2016, however, Take Charge Staffing agreed to provide the "payroll" service for 23 illegal aliens at Speed Fab-Crete.

On or about September 23, 2016, Speed Fab-Crete terminated 39 illegal aliens and essentially reassigned 23 illegal aliens from Speed Fab-Crete's payroll to Take Charge Staffing's payroll.  Each of the 23 illegal aliens returned to work at Speed Fab-Crete the following business day.

38.     On or about October 11, 2016, in accordance with the Settlement Agreement with ICE, Speed Fab-Crete caused a letter to be sent to the government stating that all 39 of the illegal aliens were released and were "no longer working at Speed Fab-Crete Corporation," which was false and misleading.

39.     Once the above facts came to light, Speed Fab-Crete entered into a non-prosecution agreement with the government in which it agreed to pay $3,000,000 to the government, over a five-year period, representing funds subject to forfeiture as proceeds of the offense.  Carl Hall, Bloxom, and Hamm each agreed to be jointly and severally liable for this obligation if Speed Fab-Crete failed to make a scheduled payment or did not pay the full amount.

**B.     Criminal Charges Are Filed Against Speed Fab-Crete's Owners**

40.     By information filed in the U.S. District Court for the Northern District of Texas on December 9, 2019, Carl Hall, Bloxom, and Hamm were also criminally charged as a result of this scheme.  (Also charged were Sevier and Robert Jones, who was identified as the company's Chief Financial Officer.)  Carl Hall and Sevier were charged with conspiracy to unlawfully harbor illegal aliens, in violation of 18 U.S.C. § 371. Bloxom, Hamm, and James were charged with unlawful employment of aliens, in violation of 8 U.S.C. § 1324a(a)(1)(A) and (f)(1).

41.    Carl Hall, Bloxom, and Hamm had each negotiated plea agreements that were filed at the same time the information was filed, and by which each agreed to plead guilty to the charge against him.  These plea agreements each contained a sentencing agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) for a fine of $69,000.00, with the proviso that if the court accepted the plea agreement, that fine amount would be binding on the court, but that if the court rejected it, the defendant could withdraw his guilty plea.

42.    Carl Hall appeared before the magistrate judge on January 9, 2020 and entered a guilty plea.  He was at that time released on conditions set by the magistrate judge (which included a requirement to surrender his passport), and was cautioned that he must "appear in court as required and, if convicted, must surrender as directed to serve a sentence that the court may impose."  Carl Hall signed an acknowledgment of the conditions in which he stated, among other things, that "I acknowledge that I am the defendant in this case."

43.    Bloxom appeared before the magistrate judge on January 16, 2020 and entered a guilty plea.  He was at that time released on conditions set by the magistrate judge (which included a requirement to surrender his passport), and was cautioned that he must "appear in court as required and, if convicted, must surrender as directed to serve a sentence that the court may impose."  Bloxom signed an acknowledgment of the conditions in which he stated, among other things, that "I acknowledge that I am the defendant in this case."

44.    Hamm appeared before the magistrate judge on January 23, 2020 and

entered a guilty plea.  He was at that time released on conditions set by the magistrate judge (which included a requirement to surrender his passport), and was cautioned that he must "appear in court as required and, if convicted, must surrender as directed to serve a sentence that the court may impose."  Bloxom signed an acknowledgment of the conditions in which he stated, among other things, that "I acknowledge that I am the defendant in this case."

45.     The district judge accepted Carl Hall's, Bloxom's, and Hamm's guilty pleas by orders entered on February 5, 2020 (Carl Hall and Bloxom) and February 28, 2020 (Hamm) that adjudged each defendant guilty of the charge applicable to him.  As part of these same orders, the district judge made a determination that each of Carl Hall, Bloxom, and Hamm could remain on release as previously determined by the magistrate judge, and also stated that sentencing would occur at a later date pursuant to a separate scheduling order.

46.     Carl Hall's sentencing was scheduled for April 22, 2020, but was ultimately postponed until July 29, 2020.  At sentencing, the district judge agreed to accept the Federal Rule of Criminal Procedure 11(c)(1)(C) provision in Carl Hall's plea agreement for a $69,000 fine, and the district judge also sentenced Carl Hall to a six-month prison term.  Consistent with Federal Rule of Criminal Procedure 32(k)'s requirements of a judgment of conviction setting forth "the court's findings, the adjudication, and the sentence," a written judgment of conviction for Carl Hall was then filed on the docket on July 30, 2020 stating that Carl Hall's guilty plea had been accepted by the court, that Carl Hall "is adjudicated guilty" of the offense, and stating the sentence that had been

imposed.  Carl Hall was only then marked as a "terminated" party on the docket as of that date.

47.    Bloxom's sentencing was scheduled for May 20, 2020, but was ultimately postponed until September 2, 2020.  At sentencing, the district judge agreed to accept the Federal Rule of Criminal Procedure 11(c)(1)(C) provision in Bloxom's plea agreement for a $69,000 fine, and the district judge also sentenced Bloxom to a two-month prison term.  Consistent with Federal Rule of Criminal Procedure 32(k)'s requirements of a judgment of conviction setting forth "the court's findings, the adjudication, and the sentence," a written judgment of conviction for Bloxom was then filed on the docket on September 4, 2020 stating that Bloxom's guilty plea had been accepted by the court, that Bloxom "is adjudicated guilty" of the offense, and stating the sentence that had been imposed.  Bloxom was only then marked as a "terminated" party on the docket as of that date.

48.    Hamm's sentencing was scheduled for May 27, 2020, but was later postponed until July 15, 2020.  At sentencing, the district judge agreed to accept the Federal Rule of Criminal Procedure 11(c)(1)(C) provision in Hamm's plea agreement for a $69,000 fine, and the district judge also sentenced Hamm to a four-month prison term. Consistent with Federal Rule of Criminal Procedure 32(k)'s requirements of a judgment of conviction setting forth "the court's findings, the adjudication, and the sentence," a written judgment of conviction for Hamm was then filed on the docket on July 21, 2020 stating that Hamm's guilty plea had been accepted by the court, that Hamm "is adjudicated guilty" of the offense, and stating the sentence that had been imposed.

Hamm was only then marked as a "terminated" party on the docket as of that date.

49.    As the defendants in the criminal case, Carl Hall, Bloxom, and Hamm were aware of and participated in the case, and the criminal charges against Carl Hall, Bloxom, and Hamm were not concluded as to each until sentencing and entry of the written judgment of conviction required by Federal Rule of Criminal Procedure 32(k) (which occurred on July 30, 2020 for Carl Hall, September 4, 2020 for Bloxom, and July 21, 2020 for Hamm).  Additionally, Janet Hall was also aware of the criminal case because, among other things, she submitted a letter in support of her husband and attended court proceedings with him.

## C.    Speed Fab-Crete's Application for and Receipt of PPP Loans

### The First Draw Loan

50.    Meanwhile, on or about April 10, 2020, Speed Fab-Crete submitted a PPP loan application to Citizens National Bank (a delegated PPP lender) seeking a loan in the principal amount of $1,170,000 (hereinafter the First Draw Loan).  The application for the First Draw Loan was signed by Bloxom (identified as the company's Chairman), Hamm (identified as its President), and Janet Hall.  And although Carl Hall did not sign the application, he was the company's Chief Executive Officer at the time and was involved in the communications with Citizens National Bank to obtain the loan.

51.    Question number 5 on the application for the First Draw Loan asked, "Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently

incarcerated, or on probation or parole?"  The application also expressly stated, "If

questions (5) or (6) are answered 'Yes,' the loan will not be approved."

52.     Despite the pending criminal charges against Bloxom and Hamm (and Carl

Hall) discussed above, the "No" box was checked for question number 5, which was

initialed by each of Bloxom, Hamm, and Janet Hall, as shown here:

| *If questions (5) or (6) are answered "Yes," the loan will not be approved.* | | |
|---|---|---|
| **Question** | **Yes** | **No** |
| 5.   Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole?  *Initial here to confirm your response to question 5 →*     *VB*     *RA*     *JH* | ☐ | ☑ |

53.     The application for the First Draw Loan that Bloxom, Hamm, and Janel

Hall signed also required a certification that "[t]he Applicant is eligible to receive a loan

under the rules in effect at the time this application is submitted that have been issued by

SBA implementing the Paycheck Protection Program under Division A, Title I of the

Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck

Protection Program Rule)."  Speed Fab-Crete was in fact not eligible under the relevant

PPP rules, due to the criminal charges against Carl Hall, Hamm, and Bloxom as well as

the fact that Carl Hamm had not completely divested himself of any relationship with the

company (notwithstanding the purported transfer of his shares in his company to his wife

the prior month).  Nonetheless, Bloxom, Hamm, and Janet Hall each signed the

certification.

54.     The application for the First Draw Loan also required the applicant to list

"all owners of 20% or more of the equity of the Applicant" and to provide the percentage

ownership of each.  Speed Fab-Crete's application disclosed Bloxom's and Hamm's

ownership interests (listing each at 33%), but did not disclose that either of the Halls owned 20% or more of the equity of the company.

55.    Based on Speed Fab-Crete's First Draw Loan application and the eligibility certifications therein, Citizens National Bank electronically submitted information about the application to the SBA, causing the assignment of an SBA loan number and a loan guarantee under the terms of the PPP, and disbursed the loan in the amount of $1,170,000 to Speed Fab-Crete.  Based on this loan, the SBA paid Citizens National Bank a $35,100 processing fee.

56.    Speed Fab-Crete subsequently applied for forgiveness of its First Draw Loan, which caused the submission to the SBA of a Form 3508EZ loan forgiveness application on or about September 21, 2020.  On this application, Speed Fab-Crete's Chief Financial Officer certified that "[t]he information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects."

57.    On or about November 2, 2020, SBA approved forgiveness of Speed Fab-Crete's First Draw Loan and remitted a payment of $1,176,597.50 (consisting of the loan principal amount of $1,170,000 plus accrued interest) to Citizens National Bank.

The Second Draw Loan

58.    On or about January 22, 2021, Speed Fab-Crete submitted a second PPP loan application to Citizens National Bank seeking a loan in the principal amount of $1,149,300 (hereinafter the Second Draw Loan).  The application for the Second Draw Loan was signed by Bloxom (identified as the company's Chairman), Hamm (identified

as its President), and Janet Hall.  And although Carl Hall did not sign the application, he was the company's Chief Executive Officer (or Chief Operating Officer) at the time and was involved in the communications with Citizens National Bank to obtain the loan.

59.    The application for the Second Draw Loan required a certification that "[t]he Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) and the Department of the Treasury (Treasury) implementing the Second Draw Paycheck Protection Program Loans under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) and the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (the Paycheck Protection Program Rule)." Speed Fab-Crete was in fact not eligible under the relevant PPP rules at the time, due to the fact that it had been ineligible for a First Draw Loan as discussed above. Nonetheless, Bloxom, Hamm, and Janet Hall each signed the certification.

60.    The application for the Second Draw Loan also required the applicant to list "all owners of 20% or more of the equity of the Applicant" and to provide the percentage ownership of each.  Speed Fab-Crete's application disclosed Bloxom's and Hamm's ownership interests (listing each at 33%), but did not disclose that either Hall had an ownership interest.

61.    Based on Speed Fab-Crete's Second Draw Loan application and the eligibility certifications therein, Citizens National Bank electronically submitted information about the application to the SBA, causing the assignment of an SBA loan number and a loan guarantee under the terms of the PPP.  On or about January 21, 2021,

Citizens National Bank disbursed the loan in the amount of $1,149,300 to Speed Fab-Crete.  Based on this loan, the SBA paid Citizens National Bank a $34,479 processing fee.

62.     Speed Fab-Crete subsequently applied for forgiveness of the Second Draw Loan on or about August 6, 2021, which caused the submission to the SBA of a Form 3508EZ loan forgiveness application.  On this application, Speed Fab-Crete's Chief Financial Officer certified that "[t]he information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects."

63.     On or about August 10, 2021, SBA approved forgiveness of Speed Fab-Crete's Second Draw Loan and remitted a payment of $1,155.589.23 (consisting of the loan principal amount of $1,149,300 plus accrued interest) to Citizens National Bank.

### COUNT I
### (False Claims Act:  Presentation of False Claims for Payment)
### (31 U.S.C. § 3729(a)(1)(A))

64.     The preceding paragraphs are incorporated by reference.

65.     By virtue of the acts described above, the defendants knowingly requested and obtained PPP loans that Speed Fab-Crete was not entitled to.

66.     The defendants also knowingly requested and received forgiveness of the PPP loans, despite that Speed Fab-Crete was not entitled to the loans or loan forgiveness.

67.     By virtue of these false claims, the United States was damaged for the full amount of the PPP loans (with interest) and the processing fees paid to Citizens National Bank in connection with Speed Fab-Crete's PPP loans, plus any other costs or interest,

and is entitled to treble damages under the FCA, plus civil penalties for each false claim.

## COUNT II
**(False Claims Act: Making or Using False Records or Statements)**
**(31 U.S.C. § 3729(a)(1)(B))**

68.    The preceding paragraphs are incorporated by reference.

69.    The defendants knowingly created and submitted PPP loan applications and

loan forgiveness applications that contained misrepresentations about the criminal

charges and criminal history of Speed Fab-Crete owners and key employees, about Speed

Fab-Crete's ownership, and about Speed Fab-Crete's eligibility to obtain PPP loans and

loan forgiveness.

70.    By virtue of these false records or statements, the United States was

damaged for the full amount of the PPP loans (with interest) and the processing fees paid

to Citizens National Bank in connection with Speed Fab-Crete's PPP loans, plus any

other costs or interest, and is entitled to treble damages under the FCA, plus civil

penalties for each false claim.

## COUNT III
**Unjust Enrichment**

71.    The preceding paragraphs are incorporated by reference.

72.    This is a claim for the recovery of monies by which the defendant have

been unjustly enriched.

73.    By obtaining from the United States, through Citizens National Bank, PPP

funds to which Speed Fab-Crete was not entitled, the defendants were unjustly enriched

and the United States is entitled to damages in an amount of the principal and interest

amounts of the loans at issue, plus processing fees.

## JURY DEMAND

The United States demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF AND JURY DEMAND

The United States requests that the Court enter judgment against Defendants Speed Fab-Crete Corporation, Carl Eugene Hall, Ronald Alan Hamm, David Leon Bloxom, and Janet Hall and grant the following relief:

(a)  on Counts I and II, treble the damages sustained by the United States for the defendants' violations of the False Claims Act, plus the maximum civil penalties allowed by law for each false claim;

(b)  on Count III, the amount by which the defendants were unjustly enriched;

(c)  pre- and post-judgment interest as allowed by law; and

(d)  all other relief to which the United States is justly entitled.

Respectfully submitted,

LEIGHA SIMONTON
UNITED STATES ATTORNEY

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  214-659-8626
Facsimile:   214-659-8807
brian.stoltz@usdoj.gov

Attorneys for the United States